| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 S. Potomac Street, Centennial, Colorado 80112<br><br>Plaintiff:        PAULETTE KNIGHT, an individual<br><br>Defendant:   AURORA DENVER CARDIOLOGY<br>                     ASSOCIATES, P.C., a Colorado<br>                     professional corporation | |
| **Attorney for Plaintiff:**<br>Sean M. McCurdy, #25427<br>McCurdy & Eichstadt, P.C.<br>9085 E. Mineral Circle, Suite 380<br>Centennial, CO 80112-3462<br>Phone: (303) 832-8870<br>Fax: (303) 832-8871<br>E-mail: mccurdy@mccurdy-eichstadt.com | Case Number:<br><br>Ctrm: |
| **PLAINTIFF'S COMPLAINT AND JURY DEMAND** | |

Plaintiff Paulette Knight ("Knight"), by and through her attorney, Sean M. McCurdy of McCurdy & Eichstadt, P.C., hereby submit *Plaintiff's Complaint and Jury Demand* against Aurora Denver Cardiology Associates, P.C. ("ADCA") as follows:

## I.   INTRODUCTION

1.      Plaintiff alleges claims against Defendant ADCA arising out of Plaintiff's employment with ADCA and the subsequent termination of that employment.

2.      This action is brought pursuant to: (a) Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), as amended by Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981A ("1991 Act"); (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as amended, *inter alia*, by the 1991 Act; (c) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"); (d) the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"); and, (e) a tort claim for the wrongful termination of Plaintiff's employment related to Plaintiff's exercise of her statutory rights under the Workers' Compensation Act of Colorado, C.R.S. § 8-40-101, *et seq.* (the "WCA"), during her employment with ADCA.

1

EXHIBIT

**B**

## II.   JURISDICTION AND VENUE

3.     Jurisdiction is proper in this Court pursuant to the Colorado Constitution, Article VI, § 9, and the amount in controversy meets the jurisdictional limits of this Court.

4.     Venue is proper in this Court pursuant to Rule 98 of the Colorado Rules of Civil Procedure as the Defendant's corporate headquarters and/or principle place of business is in Arapahoe County, Colorado, and the alleged tort and statutory violations were committed in Arapahoe County, Colorado.

## III.   PARTIES

5.     Plaintiff Knight is a United States citizen and resident of Colorado.

6.     Defendant ADCA is a Colorado professional corporation with its corporate offices located at 1444 S. Potomac Street, Suite 300, Aurora, Colorado 80012, and at relevant times herein was the employer of Plaintiff.

7.     During Plaintiff's employment and continuing thereafter, Defendant has continuously been doing business in the State of Colorado, and has continuously had in excess of 100 employees.

8.     At the time of Plaintiff's separation from employment with Defendant, the Defendant employed over 100 employees on its payroll in each of twenty (20) or more calendar weeks in the preceding calendar year.

9.     During Plaintiff's employment, Defendant was Plaintiff's "employer", within the meaning of Section 701 of Title VII, 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b) of the ADEA, and 42 U.S.C. § 12111(5) of the ADA.

10.    During Plaintiff's employment, Plaintiff was an "employee" of Defendant within the meaning of Section 701 of Title VII, 42 U.S.C. § 2000e(f), 29 U.S.C. §630(f) of the ADEA, and 42 U.S.C. § 12111(4) of the ADA.

11.    Knight is a black, female, 65 years of age (born in 1949), who asserted her rights under the WCA during her employment at ADCA, and she was disabled or regarded as disabled at the time of her termination at ADCA.

12.    During Knight's employment at ADCA and continuing thereafter, she is entitled to the rights and privileges protected by § 1981, Title VII, the ADEA, the ADA, and the WCA.

## IV.    ADMINISTRATIVE PROCEEDINGS

13.    On November 1, 2012, Knight filed a charge of discrimination, Charge No. 541-2013-00203 (the "Charge").   This charge was investigated by the U.S. Equal Employment Opportunity Commission ("EEOC").

14.    After more than 180 days following the filing of Knight's Charge and the expiration of the EEOC's exclusive jurisdiction, on January 29, 2014, EEOC issued Notice of Right to Sue ("NRTS") to Knight.

15.    This action is brought within 90 days of Knight's receipt of the NRTS from the EEOC.

16.    Plaintiff has exhausted her administrative remedies and has otherwise complied with all conditions precedent to the filing of this action.

## V.    GENERAL ALLEGATIONS

### A.    Paulette Knight

17.    In 1992, Knight obtained her Degree in Nuclear Medicine Technology, from the Community College of Denver.

18.    In 1992, Knight obtained her NMTCB (Nuclear Medicine Technologist Certification Board) and ARRT (American Registry of Radiologic Technologist) certifications.

19.    On or about March 20, 2001, ADCA hired Knight as a Nuclear Medicine Technologist ("NMT").

20.    During her approximate 11.5 years as an employee of ADCA, Knight had several managers, including William Guess ("Guess") and David LeMon ("LeMon").

21.    At ADCA, LeMon conducted a Performance Evaluation ("PE") of Knight in or around December 2008.

22.    Knight scored 65 out of 65 possible points on her PE from LeMon in or around December 2008.

23.    Knight received several merit-based pay raises at ADCA.

24.    On or about June 18, 2011, Knight sustained a work-related injury to her right shoulder, arm, and/or bicep, from moving patients to and from imaging tables at ADCA.

25. Knight reported her work-related injury to LeMon, her immediate supervisor at ADCA.

26. On or about June 20, 2011, Knight's worker's compensation claim at ADCA was filed.

27. On or about September 2, 2011, Knight was examined by Dr. Breden Reiter at HealthOne Occupational Medicine and Rehabilitation.

28. In or about September 2001, Dr. Reiter diagnosed Knight with a right shoulder and bicep strain.

29. In or about September 2011, Dr. Reiter recommended pain medication and prescribed physical therapy for Knight.

30. Knight attended all of her scheduled doctor appointments and prescribed physical therapy appointments.

31. Knight was released from care by Dr. Reiter on or about September 19, 2011, with maximum medical improvement and without work restrictions.

32. After September 19, 2011, Knight continued to experience pain in her right shoulder, anteriorly and posteriorly, and also in her right bicep.

33. After September 19, 2011, Knight notified LeMon of her continued pain from her work-related injury at ADCA, and Knight asked LeMon to re-open her worker's compensation claim at ADCA.

34. On December 2, 2011, Knight was re-evaluated by Dr. Reiter, who again recommended pain medication and prescribed physical therapy for Knight.

35. In or around December 2011, Dr. Reiter recommended or approved the re-opening of Knight's worker's compensation claim at ADCA.

36. In or around December 2011, Knight's worker's compensation claim at ADCA was re-opened.

37. Knight attended all of her scheduled doctor appointments and prescribed physical therapy appointments, after her worker's compensation claim at ADCA was re-opened.

38. Prescribed physical therapy and medicine recommended by Dr. Reiter failed to resolve the pain from Knight's work-related injury at ADCA, and Dr. Reiter ordered an MRI of Knight's right shoulder on or about January 11, 2012.

39. Knight's MRI on or about January 11, 2012 was abnormal, and she was referred to Dr. Phillip Stull of Colorado Orthopedic for an orthopedic consultation.

40. Knight met with Dr. Stull for an orthopedic consultation on or about January 26, 2012.

41. Dr. Stull examined Knight and recommended right shoulder arthroscopy due to a tear in her right shoulder.

42. Dr. Stull performed surgery on Knight's right shoulder on or about February 13, 2012, in an attempt to resolve her work-related injury at ADCA.

43. Knight was examined by Drs. Reiter and Stull after her right shoulder surgery.

44. Dr. Reiter recommended pain medication and prescribed physical therapy for Knight following her right shoulder surgery.

45. Knight attended all of her scheduled doctor appointments and prescribed physical therapy appointments, after her right shoulder surgery.

46. On or about March 1, 2012, Dr. Reiter examined Knight and recommended temporary work-restrictions for Knight, including not using her right arm, but allowing her to return to work at ADCA with modified work duties.

47. On or about March 1, 2012, ADCA denied Knight the opportunity to return to work at ADCA with modified work duties.

48. On or about April 12, 2012, Dr. Reiter re-examined Knight and again recommended temporary work-restrictions for Knight, including not lifting over three pounds with her right arm, but allowing her to return to work at ADCA with modified work duties.

49. On or about April 12, 2012, ADCA denied Knight the opportunity to return to work at ADCA with modified work duties.

50. On or about June 14, 2012, Dr. Reiter again re-examined Knight and again recommended temporary work-restrictions for Knight, including not lifting over ten pounds with her right arm, but allowing her to return to work at ADCA with modified work duties.

51.    On or about June 14, 2012, ADCA denied Knight the opportunity to return to work at ADCA with modified work duties.

52.    ADCA allowed Knight to return to work at ADCA on or about July 11, 2012, working approximately 40 hours per week in the Medical Records department.

53.    Knight did not work at ADCA from approximately February 13, 2012 to July 11, 2012, related to her worker's compensation claim at ADCA.

54.    Related to Knight's work-related injury, she did not work for approximately five months at ADCA, and Knight lost approximately 40% of her normally earned compensation during her five months not working at ADCA.

55.    During the five months while Knight was not working at ADCA due to her work-related injury at ADCA, ADCA denied Knight the opportunity to perform "light duty" work, to partially replace her lost income while receiving worker's compensation benefits.

56.    Prior to the termination of Knight's employment at ADCA, ADCA had specific knowledge of Knight's reported disability related to her right shoulder.

57.    Prior to the termination of Knight's employment at ADCA, Knight was regarded as disabled by ADCA.

58.    Prior to the termination of Knight's employment at ADCA, ADCA accommodated Knight's disability and eventually allowed Knight to return to work at ADCA in the Medical Records department.

59.    Knight worked in the Medical Records department at ADCA from approximately July 11, 2012 to September 2, 2012.

60.    On or about August 24, 2012, Dr. Reiter again re-examined Knight.

61.    On or about August 24, 2012, Dr. Reiter released Knight to return to work at ADCA as a NMT, with a work-related restriction for her to not transfer or lift patients.

62.    Between approximately September 3, 2012 and September 17, 2012, Knight worked at ADCA as a NMT, with a work-related restriction to not transfer patients.

63.    Knight's disability and work-related restriction to not transfer patients was perceived by ADCA as an inconvenience.

64. When Knight returned to work at ADCA on or around July 11, 2012, ADCA changed Knight's direct supervisor.

65. When Knight returned to work at ADCA on or around July 11, 2012, Knight was directed to no longer report to LeMon as her direct supervisor, but rather to begin reporting to Keith Strande (ADCA CFO) ("Strande") at ADCA.

66. After Knight's return to work at ADCA on or around July 11, 2012, Strande began harassing Knight at work.

67. After Knight's return to work at ADCA on or around July 11, 2012, Strande told Knight that her clothing was unacceptable for the workplace.

68. After Knight's return to work at ADCA on or around July 11, 2012, the clothing Knight wore to work at ADCA was not significantly different than the attire she previously wore to work at ADCA.

69. After Knight's return to work at ADCA on or around July 11, 2012, Strande told Knight, "you are throwing yourself under the bus".

70. Strande told Knight, "you are throwing yourself under the bus", in an apparent effort to demean and intimidate Knight.

71. After Knight's return to work at ADCA on or around July 11, 2012, Strande told Knight that all of her medical appointments must be provided to him in advance for approval.

72. Knight was treated differently than similarly situated employees at ADCA, due in part to Knight's documented disability, in that ADCA required Knight to provide Strande with advance notice of all medical appointments for approval, while ADCA did not require such from other similarly situated employees.

73. Throughout her employment at ADCA, Knight performed the duties of her positions on at least a satisfactory basis.

74. During Knight's employment at ADCA, she was never given any objectively measurable goals to improve any purported performance deficiencies.

75. During Knight's employment at ADCA, she had no formal patient complaints against her at ADCA.

76. During Knight's employment at ADCA, she had no formal co-worker complaints against her at ADCA.

77. As an employee of ADCA, Knight received formal recognition for her hard work and good performance, from both ADCA staff and patients.

78. During Knight's employment at ADCA, her patient-care skills were exceptional at ADCA.

79. During Knight's employment at ADCA, Knight received flowers, chocolates, and other gifts from patients at ADCA.

80. During Knight's employment at ADCA, patients informed ADCA that they were treated very well by Knight at ADCA.

81. During Knight's 11.5 years of employment at ADCA, Knight never once received any verbal or written disciplinary warning from ADCA.

## B. Perry Aspinal

82. In or around 2003, ADCA hired Perry Aspinal ("Aspinal") to work as a NMT.

83. Aspinal is a white, Caucasian, male.

84. Aspinal is approximately 58 years old, approximately 10 years younger than Knight.

85. Upon information and belief, during the two weeks just prior to Knight's termination of employment at ADCA, Knight and Aspinal worked approximately the same number of hours at ADCA.

86. Upon information and belief, during the two weeks just prior to Knight's termination of employment at ADCA, Knight and Aspinal's respective performance of their job responsibilities at ADCA was the same, or Knight performed better than Aspinal.

87. Upon information and belief, during the two weeks just prior to Knight's termination of employment at ADCA, Knight and Aspinal's respective attendance at ADCA was the same, or Knight had better attendance than Aspinal.

88. Upon information and belief, during the two weeks just prior to Knight's termination of employment at ADCA, Knight and Aspinal's respective behavior at ADCA was the same, or Knight behaved better than Aspinal.

89. When ADCA made the decision to terminate Knight's employment at ADCA, Knight and Aspinal held the same position as NMTs at ADCA, and they had the same job responsibilities.

90. When ADCA made the decision to terminate Knight's employment at ADCA, Knight and Aspinal had the same supervisors, and they were subject to the same standards governing performance evaluation and discipline.

91. Strande, Ina Roberts (ADCA CEO) ("Roberts"), and ADCA favored Aspinal over Knight in the terms and conditions of their respective employment at ADCA.

### C.   Termination of Knight

92. On or about Monday, September 17, 2012, Roberts summoned Knight to a meeting, which was also attended by LeMon.

93. In this meeting on or about September 17, 2012, Roberts informed Knight that Knight was being terminated or laid-off at ADCA.

94. When Knight was informed by Roberts that her employment was being terminated at ADCA, Knight was scheduled to work one more day on Thursday, September 20, 2012, at ADCA.

95. Knight was too embarrassed and humiliated to work on Thursday, September 20, 2012, at ADCA, and Knight informed LeMon that she would not be able to work her final shift at ADCA on Thursday.

96. ADCA's purported reason for Knight's termination is a lay-off or "reduction in force" ("RIF").

97. Strande, Roberts, LeMon, and ADCA failed or refused to provide Knight with the reason for her selection for termination in the RIF.

98. It was not until after Knight filed her Charge with the EEOC that ADCA informed Knight, either directly or indirectly, of the reason for Knight's selection for termination in the RIF.

99. There was only one ADCA employee terminated in the RIF that involved Knight (the "One-Person RIF"), specifically Knight.

100. ADCA improperly selected Knight for the One-Person RIF.

101. In the One-Person RIF, part-time NMTs were not terminated.

102.  Knight was a full-time NMT just prior to her termination of employment at ADCA.

103.  At ADCA, just prior to the One-Person RIF, Aspinal was a part-time NMT.

104.  At the time of Knight's termination of employment at ADCA, Knight had more seniority at ADCA than other NMTs who were not terminated, including more seniority than Aspinal.

105.  Just prior to Knight's termination of employment at ADCA, Knight was the only black NMT at ADCA.

106.  Just prior to Knight's termination of employment at ADCA, Knight was the eldest NMT at ADCA.

107.  Just prior to Knight's termination of employment at ADCA, Knight was working at ADCA with medical restrictions related to her worker's compensation claim at ADCA.

108.  Over the two weeks just prior to Knight's termination of employment at ADCA, Knight was earning approximately $33.44 per hour, and she was working approximately 32 hours per week.

109.  Just prior to Knight's termination of employment at ADCA, Knight was earning approximately $75,000 per year gross annualized compensation, including ADCA's contributions to Knight's health insurance and fringe benefits.

110.  ADCA engaged in discrimination against Knight on the basis of race, gender, age, and disability, and ADCA unlawfully terminated Knight for engaging in activities protected by the WCA.

111.  ADCA purposefully intended to unlawfully discriminate and retaliate against Knight in the terms and conditions of her employment, and directly intended to cause Knight's unlawful discharge from employment.

112.  As a direct and proximate result of ADCA's unlawful employment practices complained of herein, Knight has suffered, and in the future will continue to suffer, back pay and fringe benefit losses, front pay and benefit losses, out-of-pocket pecuniary losses, lost future earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience, and other compensable, non-economic injuries, to be proven at trial.   Knight is entitled to attorneys' fees and costs, in addition to other damages.

## VI.    FIRST CLAIM FOR RELIEF
### [42 U.S.C. § 1981 – Race Discrimination – Termination]

113.    Plaintiff incorporates herein paragraphs 1-112 above, as if fully set forth herein.

114.    Under ***Daemi v. Church's Fried Chicken, Inc.,*** 931 F. 2d 1379, 1387 at n. 7 (10th Cir. 1991), race is interpreted broadly under 42 U.S.C. § 1981; it extends to matters of ancestry which are normally associated with nationality, not race in a biological sense.   As such*,* persons of black skin color are a protected race under 42 U.S.C. § 1981.

115.    As a result of the unlawful actions by ADCA and its managers complained of herein, Plaintiff was discriminated against and terminated by ADCA.   Such unlawful actions were taken on account of Plaintiff's black color and race, and as a result Plaintiff's equal protection rights were violated by ADCA.

116.    The unlawful actions of ADCA and its managers complained of herein deprived Knight, a person of black color and race, of her protected rights to "make and enforce contracts" as set forth in 42 U.S.C. § 1981.

117.    ADCA's managers knew that the discriminatory actions complained of herein were in violation of federal law, and did not make good faith efforts to comply with 42 U.S.C. § 1981.  These violations by ADCA's managers were intentional, willful and wanton, done with malice or reckless indifference to Knight's federally-protected rights as set forth in 42 U.S.C. § 1981.

118.    As a result of ADCA's violation of 42 U.S.C. § 1981, Knight has suffered compensatory damages, in addition to economic and other damages, to be proved at trial.

## VII.    SECOND CLAIM FOR RELIEF
### [Title VII – Race Discrimination –
### Terms and Conditions of Employment - Termination]

119.    Plaintiff incorporates herein paragraphs 1-118 above, as if fully set forth herein.

120.    Defendant committed an unlawful employment practice against Plaintiff according to the provisions of Title VII, 42 U.S.C. § 2000e-2, by discharging Plaintiff on the basis of Plaintiff's race.

121.    Defendant's supervisory personnel knew that such actions were in violation of federal law, and did not make good faith efforts to comply with Title VII.   This violation was intentional, willful and wanton, and/or was done with malice or with reckless indifference to Plaintiff's federally-protected rights.


## VIII.   THIRD CLAIM FOR RELIEF
### [Title VII – Sex/Gender Discrimination –
### Terms and Conditions of Employment - Termination]

122.    Plaintiff incorporates herein paragraphs 1-121 above, as if fully set forth herein.

123.    Defendant committed an unlawful employment practice against Plaintiff according to the provisions of Title VII, 42 U.S.C. § 2000e-2, by discharging Plaintiff on the basis of Plaintiff's sex.

124.    Defendant's supervisory personnel knew that such actions were in violation of federal law, and did not make good faith efforts to comply with Title VII.   This violation was intentional, willful and wanton, and/or was done with malice or with reckless indifference to Plaintiff's federally-protected rights.


## IX.   FOURTH CLAIM FOR RELIEF
### [Age Discrimination under the ADEA - Termination]

125.    Plaintiff incorporates herein paragraphs 1-124 above, as if fully set forth herein.

126.    At all times Plaintiff has been qualified for the NMT position she held at ADCA.

127.    ADCA committed unlawful employment practices against Plaintiff according to 29 U.S.C. §623 of the ADEA by limiting, terminating, and otherwise discriminating against Plaintiff with respect to compensation, terms, conditions, and privileges of employment with ADCA, on the basis of her age, despite her qualifications and ability to perform the fundamental job functions of the NMT position at ADCA.

128.    As ADCA and its duly authorized agents knew that their actions towards Plaintiff constituted willful and intentional violations of the ADEA, or showed reckless disregard for the fact that their conduct was prohibited by the ADEA, ADCA did not make good faith efforts to comply with the ADEA.

129.  Because of the unlawful employment practices of ADCA, Plaintiff has suffered damages to be proven at trial; she is entitled to actual damages, in addition to other damages and equitable relief, to be proven at trial.

## X.  FIFTH CLAIM FOR RELIEF
### [ADA – Termination/Retaliation]

130.  Plaintiff incorporates herein paragraphs 1-129 above, as if fully set forth herein.

131.  Defendant committed an unlawful employment practice against Plaintiff according to the provisions of the ADA, 42 U.S.C. §§ 12101 *et seq.*, by discharging Plaintiff on the basis of Plaintiff being disabled or regarded as disabled at ADCA.

132.  This violation was intentional, willful and wanton, and/or was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

## XI.  SIXTH CLAIM FOR RELIEF
### [Wrongful Discharge in Violation of Public Policy, as set forth in the WCA]

133.  Plaintiff incorporates herein paragraphs 1-132 above, as if fully set forth herein.

134.  While employed by ADCA, Plaintiff exercised her statutory employment rights under the WCA, as set forth herein.

135.  ADCA, through its duly authorized agents and employees, discharged Plaintiff from her employment at ADCA, a significant factor in said discharge being Plaintiff exercising her statutory rights under the WCA.

136.  ADCA was aware, or reasonably should have been aware, that its actions in discharging Plaintiff from her employment violated the rights of Plaintiff as clearly expressed in the WCA.

137.  As a result of said unlawful and wrongful discharge of Plaintiff's employment by ADCA through its duly authorized agents and employees as herein stated, Plaintiff has suffered damages to be proven at trial; Plaintiff is entitled to compensatory and economic damages, in addition to other damages.

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendant, and that it order the following relief against Defendant:

A.    Enjoin Defendant from refusing to immediately reinstate Plaintiff to her previous position of NMT, with the corresponding salary, benefits, bonuses, and company seniority as if Plaintiff had continuously held such a position since February 26, 2001;

B.    Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, front pay and benefits, pecuniary economic damages, and special damages comprised in part of, but not limited to, past and future unreimbursed medical costs;

C.    Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation, and inconvenience;

D.    Attorneys' fees and costs, including expert witness fees, as allowed by law;

E.    Pre-judgment and post-judgment interest;

F.    Equitable relief, including, without limitation: (a) ordering Defendant to apologize to Plaintiff verbally and in writing for its unlawful employment practices committed against her; and, (b) ordering the posting of this Court's Judgment and Order in this action in a conspicuous location at all of Defendant's facilities located within Colorado; and,

G.    Any other appropriate relief necessary to make the Plaintiff whole and compensate her for the civil rights violations described above, and any further legal and/or equitable relief, including training and education for Defendant's employees, as deemed appropriate by the Court and authorized by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 25th day of April 2014.

Respectfully Submitted,

*s/ Sean M. McCurdy*
Sean M. McCurdy

14